The next case is United States v. Lita. Good morning. Didn't have to go very far. It didn't, no. If you may please accord, James Egan for Dahlia Lita. Along with the co-counsel, we present several challenges to the conviction for conspiracy to commit visa fraud. I will be addressing only the sufficiency argument, so I'll get right to that. The basic argument is that the evidence was insufficient because the government failed to prove that the Rahman sisters were aware that the information in the visa applications were false. And I think the best evidence that the government had to establish that they knew about the evidence, the information in those applications would have come from a consular officer that they did not call. And without that officer's testimony, there was simply insufficient proof to show that they were aware that, frankly, that there was anything more than that they were the unwitting beneficiaries of a scheme that Ms. Lita herself hatched and carried out. Wasn't their testimony elicited? Actually, I think it was by the defense on cross-examination that it was the practice of a consular officer to basically place the applicant under oath when they signed, I think it was the DS-230. And once that's in the record, wouldn't the jury be allowed to infer or not infer? And you could argue either way. But isn't that evidence from which they could infer that that, in fact, happened, that that practice, which was now in evidence, had been carried out in real life in this instance? I want to allow my co-counselor to address that more, but I'll take it on a little bit. The evidence was merely that it was that as far as that constrator, I believe, is the witness, as far as he was aware that that was the practice. But there was no evidence that the consular officer, whoever that was in this case, carried out that practice or was known to carry out that practice or had been instructed on that practice by wherever that officer was assigned in Bangladesh or wherever else in the world. So I think the government made much of that testimony, but I think it simply wasn't supported by the record that what mattered in this case was what the particular consular officer did, and we have no evidence about that. The word training? How do we deal with the evidence that when the sisters travel abroad from the United States, their application is not in the names that they were using, but in the names that their sister used in the application, that similarly their documents there falsely deny U.S. residents, give social security number, falsely deny prior proceedings? How do we deal with the fact that their own papers filed abroad contain similarly fraudulent information? Well, I think the way that is that essentially all it proves is Dahlia Lita was aware of the false information because she was filling out the visa applications post-2010. But then they re-enter the United States using the visa in the new false name. So at that point, they have presented themselves under a false name. Well, I think to say it's false is potentially a stretch. It's a different variation. Well, we haven't seen the evidence in the light most favorable to the verdict now at this point, at least on your sufficiency argument. They have traveled in a name that's not their own. Well, they're the same. They're versions of the name. Even though the government conceded that they're different versions, they're different customs for naming conventions, whatever, in Bengali. I'm sorry. I didn't hear you clearly. I'm sorry. There's a different convention for naming convention in Bengali, Bangladesh, and that the first names, I think, were very similar, in one case identical. The last name pre-2010 comes from the father's name, Rama Raman, and then post-2010 But it wasn't the name that they had used when they were in the United States. In any event, these seem to me to be arguments that you could make to the jury, but that we have to assume that they found the other way. And to the extent you're arguing insufficiency to us, I'm having a difficult time given that they traveled on the false names used by their sister to procure the visa. I think that all it shows, again, is that the evidence was in equipoise. It could go either way. And there's no evidence that they were aware of the false information. I don't think that it's necessary to find that the jury found that the names were false. After all, they did claim to be those people, and they are charged as those people. Well, but it wasn't really a question that the names were allegedly false. It's just that there were two versions. Even accepting the notion that in Bengali there may be various forms of name one may use, isn't the jury entitled to draw an inference from the fact that prior to the relevant date they had consistently used version one of their names to obtain immigration benefits, and suddenly when Dahlia engages in what seems to be conceitedly she engages in fraud, they suddenly consistently start using version two of the names. Even if one might say, now, maybe the inference would be weak if the evidence showed that over the course of their lives they had gone back and forth with some indifference as between these two names. And then you could say, well, that doesn't prove anything. But they switch. They switch. Definitively. I seem to recall that the birth certificates that were submitted by Ms. Lita in 2011-ish identified them with the names that they're charged in court here. The version two, if you like, of their names. So I don't think much can be made of the fact that they insisted on going by that name and were given visas in that name. After all, the Bengali birth certificates identified them by that name. Sotomayor, you can say that, but you have to persuade us that as a matter of law, a jury could not have concluded otherwise. I mean, I understand that you have had an argument to make to the jury, but now you have to convince us that no reasonable jury could have found that from this conduct on their part, that they were part of the scheme with their sister. Well, I think they're the — all that could be said, again, is that they were aware that they were benefiting, I suppose, from the visas, but that the question is, was there reason — did the government present sufficient evidence to prove beyond reasonable doubt that they knew that the information was false, that they knew that there was anything in these applications at all, that they understood English, that the consular officer — Do you agree that the switching in the names is some circumstantial evidence of their participation in the scheme? I'm with you that there's no direct evidence of their knowledge of the falsity in the applications, but circumstantial evidence can be pretty powerful, as you understand. Sure. But I don't know what it does. I mean, clearly it shows that when they were here first, they used one version one of their name and got certain benefits, driver's license, Social Security number, et cetera. But after they moved and the birth certificates were found and version two was used, it seemed fair for them to continue along that line of version two, because version one clearly was not the version that the Bengali government was recognizing them as. So why would they say — why would they then go back to version one of their name? It doesn't really make sense. Can I ask for just one clarification of the record? And perhaps I'll ask this of both sides. There was the medical examination form that I believe was submitted in connection with the DS-230, but I may be wrong. And I'm looking, for example, at page 470 of the joint appendix, is the one for Alina. And my question was, that one has — they have photos of the applicants. And my question is, were those submitted with the DS-230s in DACA? And I'll just tell you up front why my question is being raised, because, you know, one of the theories seems to be, well, who knows who signed these things in DACA? Maybe there were body doubles sent in, which seems, by the way, inherently implausible that, you know, twins who are going to a consulate would somehow find twin body doubles, or maybe the body double went twice and impersonated both of them. But the notion that, you know, if someone shows up at a consulate with this paperwork and maybe it's somebody who's not them, or maybe, I guess your alternative argument is maybe it was them, but they didn't read the form. So you have two alternate arguments. It could be either one. But it seems like if there's this notion that, well, if their photo is on there, it makes it increasingly unlikely that it wasn't them. But I could be wrong, because if these forms were not, in fact, or if the record is silent as to whether these forms — I don't know how they were submitted as exhibits. It was hard to follow. Were they all submitted together as a package, as exhibit whatever, that was submitted at the consulate? So I don't know if you know that, whether the medical forms were submitted as part of an exhibit that the evidence showed was submitted in DACA. Right. I — well, as to the picture that's attached to the medical form on 470, for example, for — That's for Alina. Alina, the one sister. And then if you go to page 477, that's Alina again, her picture on the actual, like, visa data summary page, which is post, I think, when she arrives in America. In theory being, though, that if — assuming, right, that that is — Yeah. It seems pretty clear that that's their actual picture. Nobody was disputing that. Yeah. If that photo was in front of the consular officer who we're told was following protocol, or that there was a protocol — Oh, I see. — that was regularly followed, wouldn't it also be an inference that the jury was permitted to make reasonably that if there's a form in front of a consular officer and it's got a photo of a person, that logically enough, that would have been the same person who appeared before the consular officer? Well — And that's my — my question is, do we know whether any of these forms with the photos were part of the package that was presented in DACA? I don't — I don't — perhaps counsel and others could answer that question. I don't know how the photos were taken and attached, but as far as, like, if the photos were attached to these documents, that the consular officer necessarily followed the full panoply of the requirements? Which I understand is a separate question, but — I think — Yeah. But it puts — it plugs a number of things. I mean, it does suggest that they are, indeed, the people who appeared in front of the consular officer. I'm not making the argument that they were. You're not making that argument. Fingerprints match. The other thing it does is the medical record is signed, right, the medical — It is signed, yes. And the visa application is signed. Right. And the jury could compare the signatures and draw an inference, if it wished, from that. Right. That they signed the document. And now — now you want to say, well, maybe they didn't read it, but there's no evidence to say they didn't read it. And, indeed, the document says that you signed it under the penalties of perjury, right? Yeah. Yeah. So, I mean, again, to the extent your argument is sufficiency, when this chain of events is looked at in the light most favorable to the verdict that was returned, I would think it would be sufficient to support the claim that they were participants in a scheme to prevent — to present false information, not just variations on their names, but information about their residing in the United States, their ever being — their ever having gotten a Social Security number, their ever being prior immigration proceedings. And so I would think the jury could find on this record that they were participants in the scheme. Well, I think that that's fair to say they're participants. But the question is, do they know? Right. And as far as the signatures go, I mean, there's nothing to — as far as we know, the record is equally supportive of an argument that the forms were just presented to them and said sign here, sign here, and they did. And then nobody ever went over the information on the form to confirm that they understood the information that they were affirming that was true. I'm asking the jury to hypothesize that. Well, I'm asking the government to prove its case. The document says you sign it under the penalties of perjury. Right. But again — And so you could — you could ask the jury to consider the possibility that they didn't read it, but the jury could reject that. On the basis of what information? Especially on the fact that they went to a medical examiner and gave the same name that they hadn't been using in the United States when they got a Social Security number, when they engaged in other proceedings. Now, all of these circumstances suggest that they were knowingly seeking this visa on false information. Again, I think that the question is whether the government proved its case on where the evidence is in Equipos. And the government could have tried to do so, but they didn't do so. And I think my counsel for Ms. Rahman will address that point about the consular officer. Let me ask you to explain how you understand Equipos. I did not understand it to be you look at each piece of evidence and consider whether there are two ways of looking at it, because you're even asking us to consider if there's a piece of evidence and there's one way of looking at it that's favorable to the government. And there's another way, and even though it doesn't have as much plausibility, it's at least out there, that that renders it in Equipos, and I did not think that was the standard. I think that it's – I'm cautious. Indeed, I think it's contrary to the view that all the evidence has – all evidentiary disputes have – we have to assume were resolved in favor of the prosecution. Well, yeah. I think you look at the sum total of the evidence. So when each of these disputes is – when we assume it was resolved in favor of the prosecution, that they read the document, that they were aware of the difference in the name and the social security number and all of that, at what point does Equipos enter into it when we assume that all these facts were resolved in the government's favor? Because I think at some point you have to – the question still is whether even if they're reviewed together in combination, there has to be something that a reviewing court can point to to say that the jury relied on this evidence or this totality of evidence to make an inference. And what was – what was that? I don't – I don't see it in the record. May it please the Court. My name is Benjamin Gruenstein, and I am counsel for Alina Roman on this appeal. With the Court's permission, I'll address the missing witness charge issue, which, while it does not go directly to the sufficiency of evidence, it does relate in the sense that there really was very limited – even if you find – if the Court finds that there was sufficient evidence to – for the government to have proven beyond a reasonable doubt that the defendants were knowing participants in the scheme, the evidence was so thin that – that it was prejudicial for the Court not to have given a missing witness charge. The district court's decision to deny the defendants a request for a missing witness charge was an abuse of discretion. Both of the prongs were met, and a missing witness charge should have been given. First, the consular officer, whoever he or she was, was peculiarly within the control of the government because he – yes. Breyer, can I ask you about that? You list the provisions of the Foreign Affairs Manual in the blue brief, which describes how the Department of State responds to a subpoena, right? Correct. Either side can send a subpoena, right? That's correct, Your Honor. You could have sent a subpoena, but you didn't, right? You didn't make a TUI request. Well, the defendants had no idea even who the consular officer was. But apparently nor did the government, right? They represented that they had no idea who it was, right? Well, there was some testimony to that effect, but the government – but, you know, I would admit that that testimony wasn't credible, that it's common sense that the government would know who its consular officer was. Who happened to be in DACA? Well, when you say the government, I mean, you're not suggesting that, you know, the people in New York had any idea who the consular officer in DACA happened to be on that day however many years ago, right? You're suggesting that somewhere in the personnel records of the consulate in DACA maybe it's written down? That's correct, Your Honor. So, in other words, the government would have had to subpoena the Department of State? That's correct. Or you could have subpoenaed the Department of State. And either way, an answer might or might not have been forthcoming. Either yes, we have the record, or no, we don't, right? That is correct, Your Honor. And isn't that the same as saying it's equally available? Like, both of you, either of you could have gone knocking to the Department of State, and nobody did. Well, but that's essentially saying that a witness is equally available when the defendant can simply ask the government for the identity of the witness. Well, but the government, again, you have to distinguish, right? I mean, if the U.S. government in some place somehow may know a fact, that doesn't mean that it's equally available to the government for purposes of here. I mean, there's the government in terms of the prosecution, and there's the government in terms of the entire United States government, which, for example, for Sixth Amendment purposes, you would not consider part of the prosecution team, right? You wouldn't consider the consulate and DACA part of the prosecution team here. Well, certainly, certainly for Sixth Amendment purposes, it's not part of the prosecution team, but I'm not sure for purposes of whether the witness is peculiarly within the control of the government that you don't look broader than the prosecution. So your position is that equally available or peculiarly within the control of the government for purposes of missing witness instruction means any component of the United States government anywhere in the world? I'm hesitant to go that broad. It's just I'm not familiar. I mean, like DACA. I'm not familiar with a case that limits it. I mean, is there a case that says that anybody who has ever in the past worked for the government, and which we don't know whether currently works for the government or not, is peculiarly within the control of the government? Well, there are certainly cases that address the question of equally available with State Department officials, and if that were somehow outside the scope of the universe that were considered to be equally available, I assume that the Court would not have reached the question. But the goal is not to give you a charge. The goal is to either get the witness before the jury or identify the witness, et cetera, so that a party who thinks it has probative evidence can call it. Now, if I understood you correctly, the first step that would have to be taken here would be a subpoena to or request to the State Department to see if they could identify who this officer was. And did I also understand you to acknowledge that you could have done that as well as the prosecutors? I think we could have taken that. I'm not sure we could have issued the subpoena without knowledge of the identity. The Court that would have. Or that we could have even sought a subpoena without the identity of the official. That said, I'm sure defense counsel could have had conversations. Now, I thought that we were assuming for the moment that neither the prosecutors in the case nor the defense knew who the official was on duty on that day. And so the first step would be to see if the State Department kept records of who was on the visa desk in Bangladesh on that afternoon. Right? And what I'm asking is, could you have sought that information the same as the prosecutors? And the answer is that I'm not sure. I know that we could have gone through the process of going to the State Department to subpoena the witness if we knew the identity of the witness. Right. But nobody knew the identity at this point is my understanding. So to that extent, insofar as you're now identifying error in the failure to give a missing witness charge, how is it that you can show that the witness was peculiarly within the control of the prosecution? Well, he was he or she was within the control of the government because he or she worked for the government. At some point in time. At some point in time. That's correct. I mean, the person could be dead. Right? I mean, we have no idea who this person is. That's correct, Your Honor. We don't know under whose, if anyone's control this person is because we don't even know who they are. Point is, you could have sent a Rule 17 subpoena, right, to the State Department saying, tell me I subpoenaed the records of who was on the whatever consular desk issuing or doing DS-230 interviews on less than such a date in DACA. Right? If you wanted to know. That's correct, Your Honor. So then we would have maybe known. And then maybe then you could have enlisted the government to say, well, you know, they're not responding quickly. Can you lean on them or something? And then maybe this would be a known answer. But right now we're just left with a void. That is correct, Your Honor. I do want to just note that the standard for this argument that I'm making on the missing witness charge, which is a more deferential standard than for the related argument, which relates to the equally available charge that the court ultimately did give. And so even if the court does find that there was no abuse of discretion on the missing witness charge, the court did err, the district court did err when it delivered a nonstandard jury instruction stating that. So what was wrong with that instruction? Well, under this court's decision in U.S. v. Katia, there are three options. The district court has discretion to give, either to give no instruction, to give, to instruct that no unfavorable inference may be drawn against either side, or to instruct that an adverse inference may be drawn against either or both sides. In this situation, the court did not follow any of those three paths, but rather stated that the jury should not be concerned with why any witness was called or not called, or I'm sorry, the language was should not be concerned with why someone was not called as a witness or why certain evidence was not produced, which in this particular instance was a gratuitous charge in the sense that at no point did the district court argue in summation for an inference and they didn't argue that the jury should consider why someone wasn't called. But is that an incorrect statement of the law? It's — I wasn't under the impression from Katia that it spoke at all to the suggestion that it is the jury's province to be concerned about why a witness was called or not called. I understand the idea of adverse inferences about what they might have said or wouldn't have said had they been called, but I don't understand why the court erred in telling the jury that it was not their province to basically try to get in the head of a party, whether the defense lawyers or the prosecution, about why they chose to call or not call someone. Right. As a general matter, district courts don't give that instruction. So why is that legally incorrect? The case says that is legally incorrect to instruct a jury that they ought not to ask about the subjective intent of a lawyer who is before the court. Right. So if the jury understood that what they should not be concerned with was the subjective intent of the prosecutors, then that would be fine because the jury should not be concerned with that. But there was a very significant issue in this case whether the government met its burden and whether there was evidence out there that could have established guilt beyond a reasonable doubt. And so while the charge of should not be concerned with why someone was not called is not legally erroneous, it is potentially confusing. Well, but the jury didn't ask for any clarification and I didn't understand that you argued to the judge that it was confusing. I don't believe that defense counsel argued that it was confusing. So, I mean, what we do know the judge did was it told the jury on a number of occasions that the government had the burden of proof. It told them that this witness was not before them. And then it told them that they shouldn't be concerned as to why lawyers had not called the witness. You're saying that the jury might have been confused that it shouldn't consider the fact that there was no evidence from that witness in assessing whether the government  That's correct, Your Honor. But had you been given this charge before arguments, right? I wasn't counsel below, but I assume so. Right. And no one said to the judge, said to the district judge, that's going to confuse the jury and ask for a clarification. So while you hypothesize that they could have been confused, if no one asked the judge to clarify it, why should we assume that there was that confusion? Well, I don't think — I think on this prong, there is de novo review on whether a charge is confusing, and in this it's— There's de novo review on whether the charge is error. I mean, you know, you're not arguing that this misstates the law. You're arguing they might have been confused. They could have been stated better to safeguard against other erroneous assumptions they would make. But you're not arguing that the instruction itself is error. Well, I'm not arguing that it's legally erroneous, but I am arguing that it was so confusing as to call into question the verdict. And I'm asking you why a confusion argument should be entertained when no one on the scene argued to the judge, this will confuse the jury. I mean, that suggests to me that no one who tried the case perceived it as confusing. Well, I mean, Your Honor, there was significant back and forth at the trial over whether the missing witness charge— That I do understand. And ultimately, I would think that the arguments, you know, while it's true that no one specifically addressed this potential source of confusion, I would think that the arguments about the missing witness charge would be sufficient to preserve it. Thank you. Good morning, Your Honors. My name is Peter Tomeo. I'm representing the defendant appellant Lubna Rahman, and I'm going to refer to her by her first name since the sister is involved here. Your Honors, I think a few points that came up in the argument so far that I want to touch upon. Number one, the issues raised by Judge Nardini about whether this is a witness who is particularly within the control of the government. One issue which I think has to be focused on is this is a case about this form. This is not some random embassy in some country that has really no direct connection to this part of the case here. It's not like they passed through South Africa or Switzerland or something like that and somebody signed a form. This whole case is about whether the DS-230s were fraudulent. That's the fraud, because to go back to Judge Raji's comment, the fact that they came in under this, the name that the visa was issued in, well, the visa was already issued. That was the only way they were coming in. If they presented some other identification when they showed up at the border, that visa would not have been accepted. So the whole issue comes back to what took place in DACA. And the whole issue comes back to what did we know about what was said. I'm not sure I'm entirely following you, Mr. Tomeo. I'll try to be clear. If I come in on a passport or a visa that identifies me as Jane Doe, I mean, I know I'm not that person. I'm presenting myself as that person. How could that not also be a pertinent part of the fraud? That's the objective of the fraud. Let me just turn the analogy a little bit, Your Honor, if I could. If I come into the country on a visa that says I'm Pietro Tomeo, and I know that the Italian equivalent to Peter is Pietro, and I hand that to the — and I know that that has been issued in that name, and I hand it to the immigration officer, I know that's the only way I'm coming in is if I say I'm Pietro, because that's what the visa is. I'm not necessarily trying to mislead the immigration officer because it is my — the equivalent of my name. So I think that's where the distinction is. The distinction becomes — and this gets back to the confrontation issue, which is what I'm focused on in my brief, is what did the sisters, the twin sisters, know? What did Luebler and Elina know when they showed up at the counsel office? I don't — we're not arguing it wasn't them there. I think there's sufficient basis to say it's very unclear from the transcript what exactly happened in DACA. All these records came in as a group. But I think there's a fair inference we can't argue that they were there. But what was important is what did they understand. And the government says these documents, the 230s, were not entered for the truth of what's in them, but that's crazy. They had to be entered for the truth of what's in them. What's in them is a statement from the applicant saying I read the document, I understood the document, and these are the facts as I'm saying them. So the fact — Can I just ask you, that would be admissible as the admission of a party opponent, though, right? If we could establish that. But we're saying that that witness, the key witness in this case, never appeared. And that was the confrontation where I was dealing with. The fact that the same signature as was on the application appeared to be on the medical record, and the medical record had their picture. So you put these together and a jury could infer that the same person signed the visa application. But how could the jury infer from that that they knew what was in that? We have other evidence, and I cited in my brief, that the — The sign said I read it. But they didn't — but the evidence in the record showed they didn't read English. Lubna didn't read English. I cite the transcript. Isn't there a mix? Isn't there a mix? There's also evidence that there were subsequent events they went to where they spoke English just fine. So isn't that, again, a jury question? Well, at what point did they learn English well enough to understand? But again, if they signed that thing saying, I understand everything that's here, isn't that an inference that at least is open to the jury to say, well, they signed it, they said it on paper, I'm going to believe it? Well, it's not that they could speak English. It's that they could read English. That's what the documents — a written document, not a — It's not a list of questions that the counsel officer is filling out in DACA. He's taking a form which it says on its face is prepared by somebody else or with the assistance of somebody else. And he's saying to them, do you understand what's on this form? And there's — and he's — the form says they answered yes. And that's the statements being offered for the truth. I think there's sufficient — of Lena, because those are two different things. I am — yes, Your Honor. And I am focusing on the portion at the bottom where the counsel officer gives his statement. And it's a key issue. We addressed it in our — in our brief that actually the form stops at one point and it says, don't do anything below this line. It's on page 494 of the joint appendix. And there's a big block there that says, stop here. Don't write below this line. And below the line is where this statement of the counsel officer appears, which is basically these people appeared before me. They — I asked them these questions. They said they understood what was in this form. They said what in the form was true. Well, I don't think that's what it says. All that — that big block, I'm looking at the bottom of 494. That's a statement of the applicant. It says, I understand that I am required to surrender my visa. I understand. I understand. And then there's a signature of the applicant. The only statement, the only declarative statement purportedly by the consular officer is subscribed and sworn to before me. Then what was the purpose of having them stop until he's there? Well, we've understood was that — I understand the I in that sentence is the applicant, right? That's not the consular officer. You're correct. You're correct. It's — but — The consular officer is witnessing — witnessing the signature. At least that's how the form is set up. But he's also indicating that this is — this person appeared before them. They've indicated — they're making this — this is what they're swearing to. Right. But the fact that the person is appearing before them is something the jury could have inferred without the consular officer's assertion in the circumstances of this case. Conceded. Okay. But beyond that, Your Honor, they can't draw from this document that the applicant knew what was in the document and was saying what was in the document was true. That's what the consular officer is attesting to in his statement. Right. But did I understand that the government did not rely on the consular officer and the judge told the jury that the consular officer was not before them? So we have to look at this on whether or not the evidence quite apart from the consular officer's attestation was enough. The government specifically relied upon the statement in here that they had read it and that they understood it. Their statement. Their — but the only way we know it's their statement is from the attestation of the — of the consular officer. I may not have been clear. They sign it. And if the jury could infer that that was their signature by comparing it with the medical record bearing their picture, the medical exam document, why isn't that enough? Well, Your Honor, I think given on the facts that we have before us that the — that the daughters were illiterate in English, they could not write and understand the written word of English, and this is the consular officer who is appearing there and taking this statement from them. And the fact that the way this form is set up requires that it not be executed until the consular officer — until the person appears before the consular officer and he administers itself. And also, Your Honor — Is what we have here conscious avoidance by the sisters? Conscious avoidance? I don't think — yeah, I understand what you're saying. They're signing a document without caring what's in it because they want to get a visa so we can have whatever it takes to get a visa. Well, no one argued conscious avoidance. I understand. I mean, you know, maybe there's a lot of things that could have been argued but weren't argued, and that one wasn't there. I know you do. You know, I did want to indicate, too, that it seemed to me very significant that this document on its face indicates that it could be used in a criminal prosecution. So it goes beyond the usual statement that appears at the — many documents that are making a false statement on this document could subject you to criminal prosecution. This one really kind of goes a step further and says this is something that can be used and is collected for that purpose, and I think that's — So your argument is that it's testimonial because there is an implicit declaration — and correct me if I'm just — I'm misunderstanding — but there is an implicit declaration by the counselor officer that I am standing here and have witnessed this person fill out the form, understand everything, and sign it. There's — it may not be set out in the text, but it is an implicit declaration in the document that that was a hearsay that was introduced for its truth and that it was — and that it implicated the Confrontation Clause. Yes, Your Honor. Not to cut it too finely, but not that they actually filled it out. I think he's saying it was presented to me. They said this — they read it, they understood it, and it was accurate. Is there any other declaration in the document that you're asserting was introduced for its truth? Or is it really — does it boil down to that final implicit declaration? Well, I think the — well, the entire — the document is being introduced for the truth of the — that the declarants made the statements in the document, whether or not those particular statements — Those are mostly false, that they made a number of false statements in the document. They made — well, they certainly made significant — if they made those statements, there was a significant false statement. I mean, I think it's enough that they were never in the United States, that that statement alone would have been — So the one thing that's offered for its truth is that they made the statements and they knew, they understood them. Yes. Okay. Thank you. Thank you. May it please the Court, Karina Schoenberg for the United States. This case did not rise and fall on the out-of-court statement of the consular officer, and that goes to all three of the points that are raised here on appeal. I can begin with the sufficiency argument. It is undisputed that the sisters here, Alina and Lubna, used visas that were issued and procured pursuant to false statements. And there's no dispute that their older sister made false statements in order to procure the visas. The visa applications that were made in Bangladesh on behalf of Alina and Lubna, certainly material evidence that goes to show that they knew and knowingly joined the conspiracy. But that's not the only evidence that the government presented. There is a host of circumstantial evidence showing that they knew well that their older sister had attempted to get visas for them based on false statements. And there was a number of false statements, not simply that they had names that they had never used before, but also that they had never been in the United States at all, that they'd never sought Social Security numbers, they were never given alien registration numbers. And significantly, that they'd never used other names. So all of this talk about whether there's different naming conventions or whether these are different variations of a name, fall to the wayside because even if that were the case, then they were asked to disclose, did you ever use other names, and they say no. The timing here shows that the sisters were knowingly involved in the scheme. Dalia, the older sister, initially makes her application in the year 2000. Ten years go by before she starts to provide the supporting information showing that the wheels are turning to have the visas issued abroad. And it's only at that point, ten years after the initial application is made, that the two younger sisters go to Bangladesh and then the visa applications are made there. So, again, there are false statements that correspond completely with the false statements made by Dalia Lita. In the twin sisters' applications, which goes to show that they are knowing conspirators here, but it's not the only evidence involved. And as Your Honors have noted, there was a host of circumstantial evidence showing that, in fact, it was Dalia and it was Lubna who were in Dhaka, Bangladesh, making these applications and signing that they were doing so under perjury. And all of that can be inferred from the visa applications regardless of the out-of-court statement of the consular official. With respect to the admissibility of the visa applications, the argument that the visa applications couldn't be admitted because the consular officer wasn't himself on the stand was addressed at trial, and it's an authentication question. And the witness who did put these applications into evidence was one who was a custodian of the records. He could explain the process by which the documents came into the file. It was clear that visas had issued from the applications that were made, and it was part of the normal course of business to review these types of documents that were completed abroad, and that was how the government provided sufficient evidence that these documents were what they purported to be. So they were authenticated as public records, and that's enough for authentication. What about the hearsay argument? A hearsay argument wasn't made at trial, and the portions of the document that the government relied on were not hearsay. The government, in summation, did not rely on the jurat of the consular officer, which was the out-of-court statement. And with respect to how these documents were treated at trial, the objection to foundation, as defense counsel called it at trial, happened when the records custodian was on the stand. The witness who actually discussed the substance of the visa applications was from the National Visa Center, Con Schrader his name was, and he is the one who actually discussed the substance of the documents, and no objections were made to anything that he said with respect to whether or not it was hearsay. To the extent, again, the government was putting forth the false statements, which were not offered for their truth, and to the extent that there were statements that could be construed as hearsay, for example, that the older sister helped with the applications, that would be the statement of a party opponent or of statements in furtherance of the conspiracy. I guess I'm having problems, and maybe I'm just missing something, but it seems like the statements, they're either not introduced for their truth, if the government's theory is that they're false, they're admissions or co-conspirator hearsay, but some form of admission, and the counselor's statement, I'm looking at 494, the counselor's statement, subscribed and sworn to before me this day of September 12th, to the extent that's a declaration, wouldn't that be a public record? Yes, I think it could be both, Your Honor, and I think it's an out-of-court statement and it's part of a public record. And again, there's information in the document that allows the jury to infer that in fact the applicant was present in DACA and signed the form swearing to its contents. Part of what makes this a little bit of an interesting document is that that information can be proved two different ways. One, through inference by circumstantial evidence, and two, directly through the hearsay statement. And the government didn't rely on the hearsay statement for the reason that everyone was aware of, including the jury, that the counselor officer was not there to testify in court. With respect to the jury instructions, the request for a missing witness instruction only came up during the charge conference. None of the defendants had requested that instruction in advance and the district court properly denied the request. There was no showing that the witness was not equally available to either party. The Foreign Affairs Manual clearly contemplates that someone who is working for the Department of State can receive a subpoena from a private party. There's nothing in the record to suggest that the defense ever asked the government who the counselor official was or sought to obtain an interview or any other type of identifying information about that witness. And it's for that reason also that the judge was appropriately wary of the type of gamesmanship that is often accompanying such requests, where you don't really want to get the witness there, but you also want the jury to draw a negative inference. And there was no proposed instruction given by the defense. I saw that there was some suggestion in the briefing that the defense was not given a meaningful opportunity to make that request. That's just not right. At the charge conference, the judge first says, no, I won't give that instruction, but then they talk a little bit more about, well, can you get this witness here or not? Could the government have made the witness available or not? The judge says, I'll think about it. The government says, well, I'd like to put in some additional briefing. And the judge says, yes, sure, anything would be helpful. I appreciate it. And ultimately, neither the government nor the defense put anything in, but this was a day before the charge was given, and certainly there was an opportunity to propose language. In case it's not clear from the record, the jury was charged here before summations. So all of the lawyers, in addition to have heard the proposed charges at the charge conference, also heard the instructions actually given to the jury and then made their summations. And it's plain that the defense relied very heavily on the fact that the consular officer was not a witness. And the judge had said in advance at the charge conference, of course you're not limited from arguing that the government hasn't proven his case because it failed to bring this witness, and that's the argument they made. And there were even statements about, you know, I haven't heard anything at this trial that would explain why this witness wasn't here. So they even went so far as to question why the witness hadn't been called. And so the summations were not impaired in any way by the instructions, which would also be a showing necessary here to get a reversal. With respect to the instruction that was given, I think it's necessary to push back a little bit on the characterization of this instruction as an uncalled witness instruction. That's not exactly what it was. This was the portion of the instruction where the district court was telling the jury, only decide this case based on the evidence in front of you. And he included the instruction that was requested by the defendants, you know, don't just count the number of witnesses on either side. Don't speculate about the reasons that you weren't presented certain evidence. Just decide the case on the evidence in front of you. And emphasized to the jury that, of course, it is the government's burden to prove guilt beyond a reasonable doubt. There was nothing confusing about the instruction. It was legally accurate. And, again, it did nothing to impair the defense arguments to the jury here. They made ample use of the fact that the government hadn't called a witness that they characterized as being critical to the case. Unless there are any further questions, the government would ask that the convictions be affirmed. Thank you, Your Honor. I only want to point out that the birth certificates did identify both of the Raman sisters by the names that were used in the visa applications. Thank you. Unless the Court has any additional questions. Thanks. Thank you, Your Honor. And I'll also be brief, but I did want to say one thing, which is that the government's argument that there was other circumstantial evidence when I was listening carefully to the prosecutor, she always came back to the difference between what the other evidence showed and what was on the form. So the form is the central portion of this case. The fact that it was admitted without the testimony of the counsel officer violated my client's confrontational rights to determine what actually happened. And under the facts of this case and the arguments that we've made, we ask that this judgment be reversed. Thank you, Your Honor. Thank you all. Well argued. We took up a good portion of your morning.  So I'll ask the clerk to adjourn court. Thank you.